<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| CHRISTIAN TORSKE, | : : : | |
| Plaintiff, | : : | |
| v. | : : | Civil Action No. 11-3609 (MAS) (LHG) |
| DVA HEALTH & NUTRITION GMBH, | : : | **MEMORANDUM OPINION** |
| Defendant. | : : : | |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court upon Defendant DVA Health & Nutrition GmbH's ("Defendant" or "DVA Germany") Motion for Summary Judgment filed on September 7, 2012. (Def.'s Br., ECF No. 35.) The motion seeks dismissal of Plaintiff's Second Amended Complaint in full. On September 17, 2012, Plaintiff Christian Torske ("Plaintiff") filed Opposition to the Motion. (Pl.'s Opp'n, ECF No. 36.) Defendant filed a Reply on September 24, 2012. (Def.'s Reply, ECF No. 38.) The Court has carefully considered the Parties' submissions and decided the matter without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78. For the reasons stated below, and other good cause shown, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Complaint is DISMISSED with prejudice.

**I.      Background**

      **A.      Factual History**

Plaintiff, prior to the events which led to this Complaint, was employed by Helm New York, a subsidiary of Helm Germany, as President. (Pl.'s Opp'n 2.) In 2008, the management at Helm Germany advised Plaintiff that mandatory job rotation was to take effect sometime in the future. (*Id.*) As part of the job rotation, Plaintiff would have to either transfer to Helm Germany or accept the position of Vice President for Helm New York. (*Id.*)

Subsequently, but before Plaintiff was required to provide Helm with his decision, Plaintiff was contacted by DVA Germany. (*Id.* 3.) DVA Germany is a German entity that was looking to expand its interest in the United States. (*Id.*) To further this goal, DVA Germany began preliminary negotiations with Plaintiff. (*Id.*) As the negotiations progressed, it was decided that DVA Germany would form a subsidiary, DVA America, and Plaintiff would serve as its President and Chief Executive Officer. (Def.'s Br. 2.) Although the Parties disagree as to the exact parameters of the negotiations and agreements, Plaintiff maintains that DVA Germany, as part of the offer, promised to provide $1,000,000 in funding to DVA America. ("Compl.," ECF No. 27-5, Count 1 ¶ 3.) Plaintiff explains that this funding was to be made in two installments: $500,000 at the beginning of the venture, plus another $500,000 in financing of general business expenses in the future. (*Id.*)

As a result of these promises, Plaintiff alleges he was induced to leave his previous employment and accept a position with DVA America. (*Id.*) Thus, DVA America was incorporated in New Jersey on June 4, 2009. (Def.'s Br. 2.) Thereafter, on August 1, 2009, Plaintiff signed an employment agreement (the "Agreement") with DVA America. (*Id.*) The Agreement allowed for termination for cause, and other than for cause. (ECF No. 35-4, Ex. 1,

Agreement.) Matthias Damm, a principal of DVA Germany, and Peter Zimmerman, Vice President of DVA America, signed the Agreement. (Pl.'s Opp'n 5.)

Plaintiff avers DVA Germany did not provide the second allegedly agreed upon $500,000 in capital funding, which directly resulted in the poor sales performance of DVA America. (*Id*. 7.) Several months later, on January 17, 2011, by a vote at a Special Meeting of the Board of Directors, Plaintiff was terminated prior to the expiration of his employment contract. (Def.'s Br. 2.) DVA America has since filed for bankruptcy. (*Id.*)

With this factual backdrop, the following undisputed material facts are necessary for resolution of this motion. The employment Agreement which Plaintiff alleges was breached was signed by DVA America and Plaintiff. (Def.'s SUMF ¶ 2, ECF No. 35-6) (Pl.'s Response to Def.'s SUMF ¶ 2, ECF No. 36-4.)  DVA Germany agreed that initial working capital funding for DVA America was to be $1 million financed by DVA Germany, with $500,000 up front, and $500,000 as needed. (Pl.'s SUMF ¶ 16, ECF No. 36-5.) DVA Germany gave DVA America $500,000 in initial funding, and an additional three loans totaling $514,000. (Def.'s SUMF ¶¶ 4-8) (Pl.'s Response to Def.'s SUMF, ¶¶ 4-8.)

B.  **Plaintiff's Complaint**

Plaintiff's Complaint was filed on March 30, 2011, in the Superior Court of New Jersey Law Division, Camden County. (Def.'s Br. 2.) On June 22, 2011, DVA Germany removed the action to this court. (ECF No. 1.) Thereafter, on April 5, 2012, Plaintiff filed a Motion to Amend the Complaint with a proposed Second Amended Complaint. (Compl.) The Court granted the Motion on May 23, 2012. (ECF No. 28.)

Plaintiff's first count claims breach of contract. (Compl. Count 1 ¶¶ 1-8.) It alleges that DVA Germany was a party to the Agreement and has failed to perform the terms of the contract.

3

(*Id*. ¶¶ 2, 4.) In particular, DVA Germany allegedly breached the contract by: (1) failing to fully finance DVA America to the $1,000,000 agreed upon as startup capital; and (2) terminating Plaintiff prior to the expiration of the Agreement. (*Id.* ¶¶ 4, 7.)[1]

The second count alleges fraud in the inducement. (Compl. Count 2 ¶¶ 1-3.) It claims that Defendant fraudulently induced Plaintiff into leaving his previous employment by representing that it would provide funding to DVA America with $1,000,000 and has failed to do so. (*Id.*)

Finally, Plaintiff's third count alleges that "DVA Germany, by its complete exercise of dominion and control, is the alter ego of DVA America." (Compl. Count 3 ¶¶ 1-3.) Accordingly, Plaintiff requests that the Court "pie[r]ce the corporate veil" of DVA America and hold DVA Germany liable for DVA America's alleged actions. (*Id.*)

## II.  Legal Standard

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A district court considers the facts drawn from the "materials in the record, including depositions, documents, electronically stored information, affidavits . . . or other materials" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c)(1)(A); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). More precisely, summary judgment should be granted if the evidence

---

[1] The Second Amended Complaint does not clearly set forth these allegations. Rather, Plaintiff in his Opposition to Summary Judgment more explicitly sets forth the theory of his alleged breach of contract claim.

available would not support a jury verdict in favor of the non-moving party. *Id.* at 248-49. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-48.

**III.    Analysis**

    **A.    Contract Claims**

        **1.    Parties' Positions**

DVA Germany argues that it is entitled to summary judgment on Plaintiff's breach of contract claim because, as an initial matter, it is not a party to any agreement with Plaintiff. (Def.'s Br. 2-3.) According to Defendant, the employment agreement at issue was between Plaintiff and DVA America, Defendant's subsidiary. Further, Defendant argues that DVA Germany is not liable under a theory of piercing the corporate veil since DVA America and DVA Germany are separate entities "with separate functions and Board of Directors." (*Id.* 3.) Finally, Defendant argues that it has not breached any agreement with Plaintiff and "DVA Germany actually fulfilled the very promise Torske alleges DVA Germany made." (Def.'s Br. 1.)

Plaintiff opposes DVA Germany's Summary Judgment Motion arguing that DVA America was an agent for DVA Germany and that DVA Germany controlled DVA America. (Pl.'s Opp'n 9.) Plaintiff argues the Agreement was negotiated by DVA Germany, executed by DVA Germany's representative, and enforced by DVA Germany. (Pl.'s Opp'n 18.) Plaintiff alleges breach in two forms: (1) that he was terminated prior to the expiration of his contract, and (2) that Defendant failed to provide the agreed upon financing. (Pl.'s Opp'n 19-20.) Plaintiff also alleges breaches of the implied duty of good faith and fair dealing. (*Id.*)

5

### 2. Parties to the Alleged Contract

DVA Germany argues that it is not a party to the contract and therefore cannot be held liable under a breach of contract theory. *Thakar v. John F. Kennedy Med. Ctr.*, 149 F. App'x 53, 54 (3d Cir. 2005). The Court agrees with Defendant. Here, the Agreement sets forth explicitly that it was made and entered into between "DVA America Corp" and "Christian Torske." (Agreement.) In fact, the Parties agree that DVA America and Plaintiff signed the Agreement. (Def.'s SUMF ¶ 2, ECF No. 35-6) (Pl.'s Response to Def.'s SUMF ¶ 2, ECF No. 36-4.) Furthermore, Plaintiff's deposition testimony confirms that he understood the Agreement to be as between himself and DVA America. (ECF No. 35-4, 59:3-14.)

Additionally, to the extent there is an agreement for capitalization it would necessarily be between DVA Germany and DVA America. (Compl., Count 1, ¶ 3, Count 2 ¶ 2 ) ("DVA Germany . . . obligated itself to the funding of $1,000,000 . . . to DVA America Corp."); ("DVA . . . represent[ed] that it would fund DVA America with $1,000,000 in cash.")

### 3. Breach of Contract Claim[2]

"A breach of contract claim has four elements. Plaintiff must prove that [1] the parties entered into a contract that contained certain terms; [2] the promisee satisfied the terms of the contract; [3] the promisor failed to satisfy at least one term of the contract; and [4] the breach caused the promisee to suffer a loss." *Cargill Global Trading v. Applied Dev. Co.*, 706 F. Supp. 2d 563, 579 (D.N.J. 2010).

---

[2] Assuming *arguendo* that Plaintiff could pierce the corporate veil, Plaintiff has failed to establish a breach of contract claim. Accordingly, the Court will not undergo a comprehensive piercing the corporate veil analysis but notes that, "involvement in [] financial and managerial affairs fails to rise to the high standard of domination necessary to pierce the corporate veil[.]" *See Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 152 (3d Cir. 1988).

### a.      Employment Agreement

In addition to Plaintiff being unable to establish that a contract exists between Plaintiff and Defendant regarding the employment Agreement, Plaintiff is similarly unable to establish that Defendant failed to satisfy the terms of the Agreement. As it relates to the employment Agreement, Defendant cannot be held liable for terminating Plaintiff. The Agreement explicitly provides for "Termination Other than for Cause." (Agreement ¶¶ 2.1(b), 2.4) ("Notwithstanding anything else in this Agreement, Company may effect a Termination Other Than for Cause at any time . . . .")

In an analogous case, applying New Jersey contract law,[3] the plaintiff argued that she was terminated prior to the expiration of the employment term delineated in her employment contract. *Sternadori v. SCS Healthcare Mktg., Inc.*, No. 05-3679, 2007 WL 710298, at *3 (E.D. Pa., March 6, 2007). In *Sternadori*, the court found that there was no breach of contract because the employment contract provided for "termination without cause." Similar to *Sternadori*, here the terms of the Agreement are clear and unambiguous. Moreover, the record reflects that there is no genuine issue of fact as it relates to an alleged breach of the Agreement. Thus, Defendant is entitled to judgment as a matter of law. Thus, Defendant is entitled to summary judgment on Plaintiff's breach of contract claim based on his termination.

### b.      Capitalization of DVA America

Additionally, and alternatively, Plaintiff argues that Defendant has breached a contract to provide $1,000,000 in capitalization. As aforementioned, this alleged contract is necessarily between DVA Germany and DVA America. Plaintiff, as a non-party to the alleged agreement, cannot demonstrate that he entered into a contract with Defendant as it related to capitalization.

---

[3] The Agreement provides that it "is to be governed and construed in accordance with the law of New Jersey applicable to contract[.]" (Agreement ¶ 6.5.)

7

Furthermore, Plaintiff's claim of a breach based on lack of capitalization suffers from a more severe infirmity. Specifically, there is *no* evidence of such an agreement in the record. This failure is fatal to Plaintiff's breach of contract claim. Put succinctly, Plaintiff must show the parties entered into a contract. "[L]oose language, [] cannot be construed as a promise to perform a specific act . . . a plaintiff must show that the parties agreed on essential terms and manifested an intention to be bound by those terms." *Shogen v. Global Aggressive Growth Fund, Ltd.*, No. 04-5695 (SRC), 2007 WL 1237829, at *15 (D.N.J. Apr. 26, 2007) (finding "no evidence from which a factfinder could reasonably conclude that an oral contract existed between [plaintiff] and the [] Defendants and the [] Defendants [we]re entitled to judgment as a matter of law.") Notably, "Rule 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case[.]" *Mallon v. Prudential Property & Cas. Ins. Co.*, 668 F. Supp. 997, 999 (1988). Here, a careful review of the statement of material facts, and supporting exhibits demonstrates that Plaintiff failed to establish that he was a party to the contract.

Moreover, even if Plaintiff were found to be a party to the contract, DVA America received in excess of $1,000,000 in funding. As such, Plaintiff can point to no support for his proposition that the portion of the money allotted in the form of a short-term loan represents a breach of contract. "Absent evidence upon which a reasonable jury could find that a particular contractual provision was breached . . . the breach of contract claim cannot proceed to trial." *Luschko v. S. Container Corp.*, No. 06-3896 (WHW), 2009 WL 5171868, at *9 (D.N.J. Dec. 23, 2009).

Accordingly, Defendant is granted summary judgment on Plaintiff's breach of contract claim.

### 4. Implied Duty of Good Faith and Fair Dealing

As an initial matter, Plaintiff's Second Amended Complaint does not specifically plead a breach of the implied duty of good faith and fair dealing. This claim is "entirely absent from the Complaint, and it is axiomatic that a plaintiff may not amend his complaint through later briefing[.]" *Boyle v. Int'l Bhd. of Teamsters Local 863 Welfare Fund*, No. 11-3202 (SRC), 2012 WL 6005657, at *4 (D.N.J. Nov. 30, 2012).

Nevertheless, Plaintiff's claim also fails substantively. "Every contract in New Jersey contains an implied covenant of good faith and fair dealing. This covenant requires that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Margulies v. Chase Manhattan Mortg. Corp.*, A-4087-03T3, 2005 WL 2923580, at *6 (N.J. Super. Ct. App. Div. Nov. 7, 2005) (internal citations and quotations omitted).

#### a. Employment Agreement

Plaintiff's claim of breach of the implied duty of good faith and fair dealing based on his termination is unavailing. "The implied covenant of good faith and fair dealing cannot override an express contract term[.]" *Sternadori*, at *4. Here, "by the express provision of the contract," Defendant is entitled to terminate Plaintiff for reasons other than for cause. *Id.* Plaintiff has not contested the language of the Agreement as it relates to termination other than for cause. Thus, even viewing the facts in a light most favorable to Plaintiff, he cannot overcome this hurdle.

9

### b. Capitalization of DVA America

Furthermore, the Court, as explained above, finds there is no evidence in the record upon which a reasonable jury could find that an agreement for capitalization was breached.[4] "A defendant meets the summary judgment standard when there is an absence of evidence that rationally supports the plaintiff's case." *Sternadori*, 2007 WL 710298, at *4.

### B. Fraud in the Inducement

#### 1. Parties' Positions

DVA Germany argues that Plaintiff cannot prevail on his fraud in the inducement claim. Specifically, Defendant argues that Plaintiff cannot show that DVA Germany made a material misstatement that he relied on, nor can Plaintiff show that DVA Germany failed to perform any promise made to Plaintiff. (Def.'s Br. 3-4.)

In opposition, Plaintiff argues that the "solicitation" of DVA Germany induced him to leave Helm New York. (Pl.'s Opp'n 9.) Plaintiff further alleges that he was induced by Defendant's promise to fund DVA America in the amount of $1,000,000. Instead, Plaintiff alleges that DVA America received only $500,000 in startup funds and an additional $514,000 in short term loans. (Pl.'s Opp'n 9.) Plaintiff alleges that the following circumstantial evidence supports his fraud in the inducement claim: (1) prior to becoming an employee for DVA,

---

[4] Furthermore, while not specifically mentioned by the Parties, it is worth noting that the Agreement at ¶ 6.2 states that: "[T]his Agreement represents the entire understanding among the parties with respect to the subject matter of this Agreement, and this Agreement supersedes any and all prior understandings . . . whether written or oral . . . including without limitation . . . any . . . payments to Executive from [the] Company." (Agreement.) "The essence of voluntary integration is the intentional reduction of the act to a single memorial; and where such is the case the law deems the writing to be the sole and indisputable repository of the intention of the parties." *Dandana, LLC v. MBC FZ-LLC*, No. 11-4386, 2012 WL 6634902, at *5 (3d Cir. Dec. 21, 2012) (internal citation omitted). Thus, Plaintiff may not circumvent the clear intentions of the Parties as memorialized in the written Agreement.

Plaintiff discussed, and declined to enter into, a partnership agreement with DVA Germany; (2) that he received only $500,000, in lieu of $1,000,000 upon the formation of DVA America; (3) he did not receive the allegedly agreed upon additional $500,000 in startup funding. (Pl.'s Opp'n 26.)

In reply, Defendant argues that Plaintiff does not have standing to allege failed promises to DVA America. (Def.'s Reply 2 n.2.) Further, Defendant argues that Plaintiff has failed to demonstrate why a loan of $514,000 would not constitute "capitalization" under the purported agreement of the Parties.

### 2. Plaintiff has Failed to Establish a Fraud in the Inducement Claim

To prevail on a claim of fraud in the inducement, New Jersey law requires a plaintiff to show that the defendant made: (1) a material misrepresentation of present or past fact; (2) with knowledge of its falsity; (3) with the intention that the other party rely thereon; and (4) which resulted in reasonable reliance by plaintiff. *Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 624 (1981).

Generally, statements as to future events do not constitute misrepresentations despite eventual falsity because the statements were not made with the intent to deceive. *Mallon v. Prudential Prop. & Cas. Ins. Co.*, 688 F. Supp. 997, 1008 (D.N.J. 1988) (citing *Ocean Cape Hotel Corp. v. Masefield Corp.*, 63 N.J. Super. 369 (App. Div. 1960)). Plaintiff must prove that "*at the time the promise to perform was made*, the promisor did not intend to fulfill the promise." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1186 (3d Cir. 1993) (emphasis in original) (citing *Anderson v. Modica*, 4 N.J. 383 (1950)). "The 'mere proof of nonperformance does not prove a lack of intent to perform.'" *Id.* (citing *Stochastic Decisions, Inc. v. DiDomenico*, 236 N.J. Super. 388, 396 (App. Div. 1989).)

The Court, after careful consideration of the record, finds the instant matter is devoid of anything more than "mere nonperformance." Plaintiff supports his allegation that DVA Germany never intended to perform by arguing that DVA Germany, rather than forming a subsidiary, wanted to form a "partnership" with Plaintiff. Under the originally proposed arrangement, Plaintiff would be personally liable for the debts of the company should it fail. Thus, Plaintiff argues, because DVA Germany originally sought different terms, Defendant never intended to honor the agreement. From this and "mere nonperformance" Plaintiff alleges that a reasonable jury could find that Defendant did not intend to fulfill their alleged financial commitments. The Court disagrees.

The Court finds *Mallon v. Prudential & Casualty Insurance Company,* instructive. 688 F. Supp. 997 (D.N.J. 1988). In *Mallon*, the plaintiff alleged that he was induced to be transferred based on "various promises . . . which never came to fruition and which it can be inferred the Defendant never intended to allow to come to fruition." *Id.* at 1008 (internal citation quotation and citation omitted). Applying New Jersey law, the court analyzed whether the defendant made a false representation of an existing intention, or had a "false state of mind." *Id.* The court noted that in order "to have a 'false state of mind' the defendant must have no intention at the time he makes the representation of fulfilling the promise." *Id.* The *Mallon* court found circumstantial evidence of subsequent acts and events and evidence that the representation was impossible to fulfill based upon the circumstances known to the promisor at the time the statement was made could establish lack of intention. *Id.* In *Mallon*, while the plaintiff undermined his claim through damaging testimony in deposition, the court found that it need not get embroiled in the significance of this testimony since "plaintiff's claim fail[ed] as a matter of law." *Id.* at 1009. The Court held that nonperformance was insufficient, and that it "could not agree with the

plaintiff that these representations of what possibilities could be in store for plaintiff's future were made by defendant knowing they would never come to fruition." *Id.* 1008-1009. Furthermore, *Mallon* held that there was no evidence of the impossibility of the representation, nor had "any subsequent acts or events been pointed to from which the Court could draw such an inference." *Id.* at 1009.

Similarly, Plaintiff in the instant matter has failed to produce any evidence, or cite to materials in the record, beyond non-performance that would support an inference that Defendant did not intend to perform. Defendant is entitled to summary judgment as a matter of law.

### III. Conclusion

After careful consideration, the Court finds that Defendant is entitled to summary judgment. For the reasons set forth above, and for other good cause shown, it is hereby ordered that Defendant's Motion for Summary Judgment is GRANTED. An order will be entered consistent with this Opinion.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: April 30, 2013